# JOSEPH E. MASON *vs.* THE MAYOR AND CITY COUN-CIL OF CUMBERLAND.

*Municipal Corporations—License Fee for Vehicles Using Streets of City—Validity of Ordinance—Police Regulation.*

The Act of 1898, ch. 158, authorized the Mayor and City Council of Cumberland to license, tax and regulate wheeled vehicles, provided that the funds derived from licenses shall be applied only to the maintenance of streets, etc. The municipality passed an ordinance making it unlawful for any person to drive a wagon or other vehicle over the streets of the city without having obtained a license therefor. Different charges were made for different vehicles; the license fee for a one-horse wagon for one year being $2.50. It was provided that the funds derived from these licenses should be applied to the maintenance of the streets. The ordinance also made it unlawful to peddle goods on the streets of the city without a license, but this was not to apply to farmers offering for sale the products of their own farms. Plaintiff had a dairy farm beyond the corporate limits and sold milk to customers in the city. He was arrested and fined for driving a milk wagon in the streets without a license, and filed the bill in this case for an injunction to restrain the enforcement of the ordinance, alleging the same to be invalid. *Held,*

1st. That the plaintiff was required by the terms of the ordinance to take out a license for the use of the streets with his wagon, and the proviso exempting farmers selling their own products from taking out a peddlers' license does not exempt plaintiff from the necessity of having a license for his wagon.

2nd. That the ordinance is not invalid because it applies to non-residents using the streets of the city as well as to residents, since the ordinance was passed in strict conformity with the legislative authority, and makes no discrimination between different classes of persons owning vehicles.

3rd. That the ordinance is a legitimate exercise of the power to impose licenses, either for the purpose of revenue or as a police regulation, and is authorized by the Declaration of Rights, Art. 15.

4th. That the amount of the license fee exacted by the ordinance is a reasonable exercise of the power to license conferred by the Legislature, as well as of the power given to tax wheeled vehicles.

Appeal from a *pro forma* decree of the Circuit Court for Allegany County.

The cause was argued before McSherry, C. J., Fowler, Page, Boyd, Pearce, Schmucker and Jones, JJ.

*Ferdinand Williams* and *Finley C. Hendrickson* (with whom were *Benj. A. Richmond* and *DeWarren H. Reynolds* on the brief), for the appellant:

The appellant, having been arrested, tried and fined by a justice of the peace, sought by his bill in equity to restrain the enforcement of that ordinance by injunction.    If the ordinance is void a Court of equity has jurisdidtion at the suit of any person injuriously affected to stay its execution by an injunction.    *Baltimore* v. *Radecke*, 49 Md. 217; *Page* v. *Baltimore*, 34 Md. 558.

The appeal therefore properly raises the questions.    1. Is the ordinance a valid exercise of power by the Mayor and City Council Council of Cumberland?    2. If valid, does the ordinance by its terms apply to the appellant and render him liable to the penalties imposed?

1.  The Constitution requires all taxes to be uniform.  If the ordinance in question imposes a special tax on certain classes of citizens and property under the guise of a license, it is repugnant to this provision of the Constitution and void.    It is true that the Legislature by the Act of 1898, ch. 158, granted the Mayor and City Council of Cumberland the power to license, tax and regulate wheeled vehicles.    It will hardly be held, however, that the Legislature intended to give any power to the city of Cumberland repugnant to constitutional provisions, but even if the Legislature meant in the use of the word "tax" in the above connection, to grant the right to tax for revenue, the Act in so far is void, and an ordinance framed on the right to tax for revenue would be void also.    The right to tax for revenue is given under the head of "Finances," Act 1898, ch. 128, and precludes any other method of raising revenue under taxing powers.    *State* v. *Mayor, etc.*, 33 N. J. 282.

The word "tax" as used by the Legislature in the Act of 1898, ch. 158 (Charter of the city of Cumberland), granting the city the power to license, tax and regulate wheeled vehicles, ought to be given the significance which the context points out.    The subject matter under consideration was the *licensing* and *regulating* the use of wheeled vehicles on the streets

of Cumberland. The Legislature supposed it would cost money to issue licenses, and tags, and regulate the use of vehicles on the streets of a city. The Legislature intended to authorize the city to raise money to meet such expenses when it gave it the power to "license, tax and regulate," and the city of Cumberland under this power would have no right to tax specially wheeled vehicles using the streets other than incidental to the police regulation of vehicles. *Harlem Co.* v. *Vansant*, 59 Md. 330; 18 *Am. & E. Ency. Law*, 744; 13 *Ibid*, 332.

Nothing in this ordinance or in any other ordinance or Act of Assembly can rescue it from the clear inference that its whole object is revenue and not police regulation; since, as stated, it prescribes that none of the money arising from its enforcement can be used for policing powers, but must be used for streets and alleys. The sole object and the whole scheme is to get revenue to spend on the streets and alleys. The Court can see that it is a revenue measure, pure and simple, for revenue *only* and not even incidentally for protection. The ordinance being then a revenue measure it is void. *Harlem Stage Co.* v. *Vansant*, 59 Md. 330; *State* v. *Mayor, etc.*, 33 N. J. 282; *City of N. Y.* v. *Sec. Ave. R. R. Co.*, 32 N. Y. 261. Even if the ordinance was a police regulation and had in good faith prescribed regulations requiring money to enforce them, it would be void as the charges for the licenses are irregular in amount and vastly disproportionate to the cost of the labor in issuing and enforcing it. Thus where for a license which costs no more to issue and no more for expenses than any other license prescribed by the ordinance, twice or three times as much money is charged. This was expressly condemned by this Court in *Vansant's case* and said to show that the ordinance was intended to raise revenue and not for police regulation.

The streets of Cumberland are public streets. They are also public highways of the State and county. It is too clear for argument that the city cannot convert them into toll roads by any indirect proceeding much less by a proceeding as bold

as this. It is only when the safety, health, comfort or the good order of the people becomes involved that the city can interfere and then only interfere on the ground of police regulation, and when it does provide for police regulation, it can only then provide a license fee which would pay for the cost of policing. Any excess would be revenue and this cannot be imposed. There is no evidence before the Court and nothing from which the Court can infer that the city, under any of its ordinances, has been put to any expense for policing in connection with the ordinance beyond cost of printing and tags. Yet it appears that it has in a short time raised a revenue of $1,550.00 by the partial execution of it.

2. On this point it is wholly immaterial whether the ordinance is valid or void, because expressly and by implication it excepts the appellant and people of his class from its operation. The appellant is a farmer owning and operating a farm in Allegany County, outside of the corporate limits of Cumberland and a taxpayer therein to Allegany County, conducting thereon a dairy farm, producing among other things milk and butter, and he was arrested and tried for driving a wagon over the streets of Cumberland which was loaded exclusively with said products of his farm, and convicted and fined $25.00, because he had no license. Section 1 of the ordinance in question, which section above makes it unlawful to drive wheeled vehicles for *pleasure* or transportation of passengers or for hauling goods, wares and merchandise or for use in any business of any kind or description, expressly provides that *this section* shall not apply to drummers selling goods by sample, to resident merchants, *nor to farmers selling or offering for sale the produce of their own farms.* It appears by the facts admitted that the appellant comes within the express exception and is not within the operation of the ordinance. It appears also that it was the clear intention of the city council to exempt milk wagons from the tax imposed by the ordinance.

*Albert A. Doub* for the appellee :
Even under the authority to license and regulate vehicles,

such an ordinance as this is generally held to be a valid exercise of the police.power of the city. *St. Louis* v. *Green*, 70 Mo. 563; *St. Louis* v. *Strunberg*, 69 Mo. 289; *People* v. *Mulholland*, 82 N. Y. 324; *Kinsley* v. *Chicago*, 124 Ill. 359; *Tenney* v. *Lenz*, 16 Wis. 589; *Carter* v. *Darr*, 16 Wis. 32.

The license does not become a tax because it exceeds the expense of issuing it. *Fire Dep't* v. *Helfenstein*, 16 Wis. 136; *Cincinnati*, v. *Bryson*, 15 Ohio, 464; *Mays* v. *Cincinnati*, 16 Ohio St. 275; *Littlefield* v. *Nebraska*, 28 L. R. A. 590; *Gortside* v. *East St. Louis*, 43 Ill. 47.

The Act does not contravene the Declaration of Rights which provides that "all taxes ought to be uniform upon the same kinds of property or class of subjects," for it also provides as follows: "Yet fines, duties, licenses or taxes may properly and justly be imposed or laid with a political view for good government and the benefit of the community." Although the defendant corporation contends that the licenses charged in this ordinance are so reasonable that they should be considered merely as licenses and not as a tax; yet under the authority conferred in its charter, even if looked upon as a revenue measure, it is a proper exercise of its power. *Newton* v. *Atchison*, 31 Kansas 151; *Burroughs on Taxation*, sec. 54; *Sedwick on State and Const. Law*, 2nd ed. 504 and 507; *Baker* v. *Cincinnati*, 11 Ohio St. 540; *Exchange Bank* v. *Hines*, 3 Ohio St. 1; *City of Zanesville* v. *Richards*, 5 Ohio St. 589.

It is not a double tax, even if the vehicle is taxed as personal property. *Frommer* v. *Richmond*, 31 Grattan. 646; *St. Louis* v. *Green*, 70 Mo. 562; *Gortside* v. *East St. Louis*, 43 Ill. 50; 6 Mo. App., appendix, 591.

An ordinance can not be held to be unreasonable which is expressly authorized by the Legislature. The power of the Court to declare an ordinance unreasonable and therefore void is practically restricted to cases in which the Legislature has enacted nothing on the subject-matter of the ordinance and consequently to cases in which the ordinance was passed under supposed incidental power of the corporation merely. *Coal Float* v. *Jeffersonville*, 112 Ind. 20. In *Tomlinson* v. *In-*

*dianapolis* (144 Ind. 142) in 36 L. R. A. 413, in a note, the subject of taxation and license of vehicles is discussed and cases are cited sustaining similar ordinances. In *Haynes* v. *Cape May*, 52 N. J. L. 180, an ordinance imposing a license of $100 on hacks was sustained.

The residence of the complainant beyond the city can not relieve him from the obligations and penalties prescribed in the ordinance. In *Bogart* v. *State*, 20 Ohio, L. J. 458, it was held that non-residents transporting their commodities between Ohio and other States could be compelled to take out a license as compensation for the wear of streets. Non-residents of a city, if they habitually use the streets, have been compelled to take out licenses in numbers of cases. *Gibson* v. *Coroapolis*, 22 Pittsb. L. J. N. 64; *Frommer* v. *City of Richmond*, 31 Gratt. 646; *St. Louis* v. *Grone*, 46 Mo. 575; 13 *Am. & E. Ency.* 536, note.

The claim that the ordinance itself expressly by its own terms exempts the petitioner from its provisions because he is a farmer, if conceded, we respectfully but earnestly contend leaves the plaintiff no standing in this Court of equity. If the ordinance itself has no application to him, what right has he to ask the Court to declare it void? If he is not affected by its provisions, his arrest has been without authority of the ordinance, and if he has been injured, he has his legal remedy therefor. He admits himself out of Court, when he contends that the ordinance *expressly exempts* him. But the ordinance, we think, does certainly apply to the complainant, not as a huckster but as a person habitually driving over the streets of the city. The exemption as to farmers selling the products of their own farms is in the paragraph that refers to peddlers, hawkers, hucksters and itinerant dealers, and the word "*section*" manifestly has the meaning of paragraph therein.

JONES, J., delivered the opinion of the Court:

This is an appeal from the Circuit Court for Allegany County in equity and from an order of that Court refusing an injunction and dismissing the bill of the appellant filed by him ask-

ing the injunction to restrain the Mayor and City Council of Cumberland from enforcing against him one of the ordinances of the said corporation and to have the said ordinance declared void. The ordinance sought to be enjoined and nullified was passed in pursuance of the powers conferred upon the said corporation by the Act of 1898, chap. 158, which, among other powers conferred, authorized the corporation " to license, tax and regulate wheeled vehicles ; provided, that the funds derived from all license shall be applied only to the maintenance and repair of streets and alleys." Authority was also given the corporation " to levy and collect a tax on the assessable property of said city for the general purposes of said corporation, not exceeding in any one year fifty cents on each one hundred dollars worth of said assessable property," and " to levy and collect such a tax on the assessable property of said city as may be necessary to pay the interest on the city bonds, and to provide a sinking fund for the redemption thereof at maturity." The ordinance which is attacked in this proceeding appears in the city code of Cumberland under the head of " License " and provides among other things that " it shall be unlawful for any person, persons, company or corporation "—" to drive or use over the streets, lanes or alleys in said city any carriage, buggy, trap, wagon, automobile or other vehicle of any kind or description for pleasure or for the transportation of passengers, or for the hauling of goods, wares and merchandise, or for use in any business of any kind or description. Provided that the funds derived from the licenses for the same be applied only to the maintenance of streets and alleys." " Or to peddle any goods, wares or merchandise whatsoever, by wholesale or retail, in or along the streets or alleys of said city "—following this last paragraph with a description or definition of who should be deemed a " peddler," and with the proviso " that this section shall not apply to drummers selling goods by sample to resident merchants, nor to farmers selling or offering for sale the products of their own farms ;" or " to drive or use over the streets, lanes or alleys in said city any milk wagon," &c., " without first having obtained a

license therefor from the city clerk as hereinafter provided."
The ordinance then proceeds to fix and prescribe the rates or
charges for the various licenses required thereby to be taken
out; and among them the license fixed "for each one-horse
wagon" is two dollars and fifty cents.

The appellant's bill alleges that he is a citizen of Allegany
County owning and operating a large farm beyond the limits
of said city, and that in pursuance of his business of selling
his "farm products in Cumberland" he "was driving with
a wheeled vehicle" over a named street in said city "and
while so driving said vehicle which was a one-horse wagon
loaded exclusively with the products of said farm" and hav-
ing "no license from the city of Cumberland" he was ar-
rested and taken into custody, and before a justice of the
peace and tried and fined under a charge of violating the ordi-
nance aforesaid by so driving upon the streets of said city
without having a license as prescribed by said ordinance."
Against threatened repitition of this interference with his driv-
ing upon the streets of the city of Cumberland as described
without first taking out a license as the ordinance which has
been recited requires, he asks the injunction. And as reason
therefor alleges that the said ordinance "is null and void,"
and that the said corporation "has no lawful right to pass or
enforce the same and that said ordinance is not in pursuance
of the defendant's charter and that such exercise of power is
against the Bill of Rights and Constitution of Maryland."
This last mentioned allegation states the main proposition to
be passed upon here.

There are other allegations in the bill besides those recited,
but all that could raise any questions for consideration were
denied in the defendant's answer and no stress seems to have
been laid upon them, and no proof was offered in regard to
them. The proof is contained in an agreed statement of facts
to the effect that at the time the appellant was arrested he was
driving a milk wagon in which he had nothing but milk from
his dairy which he was selling to his customers in said city,
which milk came from cows kept on his farm; that the city of

Cumberland is the only practicable market for his farm products, and that to get to the next market some fifteen miles distant from his farm he would have to pass over the streets of Cumberland, but no effort has been made to enforce the aforesaid ordinance against persons merely passing or driving through said city to other points beyond the city limits; or against persons who do not habitually drive over said streets; that he was arrested as alleged in his bill, and that at the time of his arrest he had no license from the city of Cumberland and no tag affixed to his wagon.

It appears from this state of allegation and proof that the appellant falls directly within one of the classes of persons required by the ordinance in question to take out a license according to its reading, unless he is excepted from its operation by the proviso that has been quoted in connection with the provision of the ordinance requiring a license for peddlers. It seems obvious, however, that this proviso from its position in the ordinance and the connection in which it occurs was only meant, in so far as it relates to farmers, to provide they should not under the circumstances mentioned therein be considered within the class of those denominated peddlers and to be required to take out a license in that character.

Nor is it any valid objection to the ordinance if not otherwise invalid that it is made to apply to all persons using the streets of the city as the appellant was without respect to residence within the city limits. There is no express inhibition upon the Legislature to confer such a power upon a municipal corporation and here the charter of the city of Cumberland confers the general power to exact the license in question and does not restrict it to be exercised only in respect to those residing within the limits of the corporation. No unjust or unfair discrimination is made in exacting of all enjoying the same privilege (in this instance the use of the streets), that they should be subject alike to a regulation which imposes some burden connected with the privilege. The rulings in the cases cited by the appellee's counsel of *Frommer* v. *The City of Richmond*, 31 Gratt. 646, and of *Tomlinson* v. *Indianapolis*, 144 Ind.

142, are directly in point on this question and express views which commend them to approval. The last named case arose under a charter conferring a power precisely like the one here being considered, and the fact there as to the residence of the party complaining just the same as it is here. The Court there said, "the only contention in truth which can be plausibly urged against the ordinance is that it charges those who drive upon the streets but live outside the city limits, the same license fees charged against those residing in the city; and we do not think the ordinance can for that reason be held invalid. The Common Council, as we have seen, is given by the statute power to pass ordinances to regulate the use of streets and alleys by vehicles. This provision would of itself be sufficient authority to sustain the ordinance. The power to regulate implies the power to license and to exact a reasonable fee for such license. But the statute further expressly provides that the Common Council may pass ordinances to license, tax and regulate wheeled vehicles." Then after alluding to the fee charged and saying there is no objection to such a conclusion because "some revenue is derived from the fees collected or that such revenue is applied to the repair of the streets," the opinion proceeds to say that "no discrimination having been made against the appellant on account of his residing outside the city limits, we have been unable to discover any good reason why he should not pay a license for his vehicle as well as any other person making like use of the streets of the city. Indeed he is at an advantage compared with the city resident; he has paid no tax to improve the streets and yet he uses them day after day in his business quite the same as a resident. It is manifestly but just, that, not having paid to improve the streets, he should at least pay the same license for using them as is paid by those who have themselves paid their share of improving the streets. If this ordinance favors any one it is the non-resident." To the same effect is the expression of views in the case in 31 Gratt. in which there was the same fact that the party objecting to the paying of the license fee was a non-resident.

The main proposition affirmed by the appellant is that the ordinance is invalid because it is an attempt on the part of the corporation to exercise the taxing power in a manner not authorized by its charter and repugnant to our Bill of Rights and the Constitution of the State. The Bill of Rights provides in connection with its declaration of the rule by which taxes are to be laid that "fines, duties and taxes may properly be imposed or laid with a political view for the good government and benefit of the community." The exercise of the power here indicated is legitimate either for the purpose of revenue or as a police regulation. *The Germania* v. *State,* 7 Md. 1. It does not seem necessary in this case to go into an inquiry as to what power the appellee corporation has as to taxation. It cannot be doubted that the Legislature had the power to confer on the corporation the authority to "license" and "to regulate" the use of vehicles on the streets of the city and to impose in so doing a reasonable charge or fee and there is as little doubt that this power has been in very clear terms conferred by its charter on the city of Cumberland.

The power professedly exercised by the city under the ordinance in question here was to license these vehicles and the charge imposed is a license fee. The only question is whether the charge as made is such a one as is reasonable and such as not to indicate an abuse of the power. *Vansant* v. *Harlem Stage Co.,* 59 Md. 330. This case was relied upon by the appellant, but it is not perceived how it supports his contention. It involved the construction of the Act of Assembly, 1880, ch. 69, giving the Mayor and City Council of the city of Baltimore power "to license and regulate all carriages and other vehicles owned and used within the city" the revenue derived from such licenses to be applied to the paving, &c., of the public highways and an ordinance passed in pursuance thereof. Under this power the city, on the 28th of April, 1882, passed an ordinance imposing a license tax upon vehicles used in the city and placed the charge of $75 as an original license on omnibuses. The appellee in that case being owner of a line of omnibuses refused to pay this charge and ten-

dered renewal license fees for its omnibuses for which it had taken out licenses for the previous year under an ordinance then existing at the rate prescribed by that ordinance and for three new omnibuses tendered the rate charged in the new ordinance "for a hackney coach, cab, buggy, wagon or other four-wheel pleasure carriage kept for hire" and upon being refused licenses upon such tender sued out a *mandamus*, which was granted by the lower Court, to compel the issue of the licenses upon the tender made.    This Court passing upon the case upon appeal fully recognized the validity of a reasonable charge for license by affirming the judgment of the lower Court in granting the *mandamus* and only treated the charge made in the ordinance against the appellee and other owners of omnibuses as void because the Court found first, that no power to levy this amount or any amount upon vehicles of any description as a tax by the city was given by the Act of .1880, ch. 69, and secondly, that it appeared clearly from a construction of the ordinance that the charge against owners of omnibuses was charged as a tax and therefore was invalid if for no other reason for the want of power conferred upon the city to levy any such tax—thirdly, that it was an excessive and unreasonable charge under the power to license and was not valid as a license fee.    The case therefore virtually turned upon the charge for license being unreasonable and excessive.

As we have seen the charge to the appellant here, professed to be for a license which the corporation of Cumberland had the clear power to charge.    Two dollars and a-half would not seem to be an excessive and unreasonable charge to require to be paid for the use of the streets of the city for a year.    The corporation is primarily the judge of what is a reasonable charge under the power to license.    *Vansant* v. *Harlem Stage Company, supra.*    In this case it was said "it may well be conceded that the Mayor and City Council of Baltimore are, primarily at least, the judges of what is a reasonable fee for licensing and regulating the omnibus lines and that it is not within the legitimate province of a Court to fix the precise

amount to be charged them ;" and again, "we may even go further and say that where there is a doubt whether the amount so fixed was reasonable or not a Court should be slow to reverse the judgment of the City Council and that every fair intendment should be made in its favor." Giving the benefit of such intendment to the appellee here there is nothing to disclose to the Court in this case that the power it exercised in enacting and enforcing the ordinance in question was not used fairly and judiciously and in a reasonable manner. The charge to which the appellant was subjected, therefore, was one which the appellee had the right to exact under the power to require licenses to be taken out by parties using the streets with vehicles as the appellant was. This is not all however. We have seen that the appellee was given under its charter the right "to license, *tax* and regulate." This power to tax had no reference to the power to tax for general purposes, but it was a power accompanying the power to license and regulate. It could properly be exercised under the police power and it was no valid objection to its exercise that revenue was derived therefrom. It is not in legal contemplation a tax on property nor a double tax. This view is well illustrated in the cases to which reference has already been made in 144 Indiana, *Tomlinson* v. *Indianapolis* and 31 Grattan, *Frommer* v. *City of Richmond*, and has received direct sanction by this Court in the case of *The Germania* v. *State*, 7 Md. 1, *supra*.

The decree of the lower Court refusing the injunction prayed in this case and dismissing the bill of the appellant will, for the reasons herein set out, be affirmed with costs to the appellee.

*Decree affirmed with costs to the appellee.*