W. GROSCUP JONES ET AL. *v.* WILLIAM S. GORDY, JR., COMPTROLLER

JAMES LECHERT *v.* WILLIAM S. GORDY, JR., COMPTROLLER

[Nos. 36, 37, October Term, 1935.]

*Decided July 12th, 1935.*

The causes were argued, as of the April Term, before BOND, C. J., URNER, OFFUTT, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Randolph Barton, Jr.*, and *Morris Rosenberg*, with whom were *Allan Sauerwein, Barton, ·Wilmer, Ambler & Barton*, and *Tydings, Sauerwein, Levy & Archer*, on the brief, for the appellants.

*Herbert R. O'Conor, Attorney General*, and *William L. Henderson, Assistant Attorney General*, with whom was *Hilary W. Gans, Deputy Attorney General*, on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

Retail merchants of the state, in two suits brought by them, question the constitutionality of an Act of the General Assembly of 1935, ch. 188, imposing an "Emergency Gross Receipts Tax" on retail sellers, for the purpose of providing unemployment relief and money for old age pensions, and, in the alternative, if the act is held constitutional, they question conformity of a regulation of the State Comptroller with it. By its terms the act became effective on April 1st, 1935, the date of its passage and approval, and the tax was to be paid at a rate of one per cent. on receipts from sales every month. The Comptroller construed this to impose a tax on receipts in the month of April, 1935, and in every month thereafter during the life of the act, without regard to the possibility that sales may have been made before April, 1935, or later, in a month other than that of the receipts. And the complainants deny that the act so provides. The writ of injunction is prayed accordingly against collection of any of the tax, or, in the alternative, against the requirement of reports of sales or payments of the tax on receipts from sales made in months other than those of the receipts. The court below denied the applications and dismissed the bills of complaint; and the appeals by the complainants have followed.

The section of the act imposing the tax, designated 72-B of article 56 of the Code, provides that:

"For the privilege of engaging in the business of selling tangible personal property at retail, there is hereby imposed upon every person engaging in such business a license fee or tax, at the rate of one per centum of the gross receipts of any such person, on or after April 1st, 1935, to and including March 31st, 1936, from the sale of all tangible personal property at retail in this State."

And the preamble in similar terms entitles the tax an "Emergency Gross Receipts Tax." Succeeding provisions for enforcement refer in their terms to sales subject to the tax, and, according to the understanding of counsel for the complainants, were provisions originally drafted for a tax based entirely on sales made, and not adapted in their terms to a changed purpose of taxing receipts only. The lack of such a readaptation, and the differences in the present provisions of the act, are thought by the complainants to present questions of the validity of the enactment. Section 72-C requires sellers to report sales during a preceding month, and by a section, 72-E, as soon as such a return is filed, the Comptroller is to examine it and compute the tax. The succeeding section, 72-F, requires persons in any business on which a tax is imposed to keep records of gross sales, and such other records as may be necessary to determine the tax liability. And a section providing for sales and transfers of businesses speaks of sales of goods as the basis of taxes to be paid. An amendment of the act by another act, numbered chapter 539, of the same legislative session, increased the fee payable for registering the original titles to motor vehicles sold, and after providing for a deduction by motor vehicle dealers of all gross sales of motor vehicles from their gross receipts, required them to pay the one per cent. tax "on the remainder of their gross sales." There are in the enforcement sections, however, specific references to receipts from sales as the basis or measure of the tax.

The complainants, regarding the basis as uncertain, contend that if the tax is to be measured by gross sales, then the act is unconstitutional because that purpose and effect are not properly allowed for in the title. Constitution of Maryland, art. 3, sec. 29. And if the tax is to be measured by gross receipts from the sales, it is objected that it is discriminatory, in violation of the twenty-third article of the Declaration of Rights of the state, and the Fourteenth Amendment of the Constitution of the United States, because by confining the basis to receipts in the same month as that of sales made, receipts deferred by credit beyond the months of sales are left untaxed, so that dealers on credit of such length enjoy an exemption. There is a further objection that the tax is unconstitutional because exorbitant and unreasonable, and the still further objection to the comptroller's construction already stated, and application of the tax to receipts at any time, out of the months of the sales from which they were derived.

Objections to the practice followed in the suits we find not well taken. In Maryland persons of an interested class, similarly affected, may, singly or jointly, and in representation of others, resort to equity to restrain execution of a legislative enactment the validity of which they deny. *Baltimore v. Ulman*, 79 Md. 469, 30 A. 43; *Mason v. Cumberland*, 92 Md. 451, 48 A. 136; *Leser v. hilip Wagner*, 120 Md. 671, 87 A. 1040; *Dinneen v. Rider*, 152 Md. 343, 136 A. 754; *Holt v. Moxley*, 157 Md. 619, 147 A. 596. There is singleness of purpose in the present complaint which prevents any objection of multifariousness. *Standard Founders, Inc., v. Oliver*, 168 Md. 317, 178 A. 223. And misjoinder, if there had been any, would not require dismissal of the suits. Code, art. 16, sec. 198.

A section 71-I of the act provides for revision and refunds of the taxes laid in particular instances, upon applications of the sellers, with a right of appeal to the circuit court of a county or to the Baltimore City Court. But that remedy does not exclude resort to equity to test and enjoin a tax on the ground that it is altogether void.

*Joesting v. Baltimore,* 97 Md. 589, 595, 55 A. 456; *Cahill v. Appeal Tax Court,* 130 Md. 495, 497, 498, 100 A. 834; *Bouis v. Baltimore,* 138 Md. 284, 288, 113 A. 852.

The objection of the complainants that the title of the act is insufficient if the tax be taken as one measured by gross sales, as distinguished from gross receipts from sales, we do not find it necessary to decide, for in the view of the court it is a tax measured by receipts. The act specifically declares it to be such, and the references to sales or reports of sales as the basis of the assessment in the provisions of what may be described as the machinery of enforcement, however inapt the words may be considered, could not overcome this specific description. We must suppose the Assembly to have been aware of the words it was using, and to have regarded them as adequate for imposition of the tax defined, a tax measured by the receipts, and must construe the sections to make them work accordingly, so far as that is possible. *Cutty v. Carson,* 125 Md. 25, 33, 93 A. 302; *Criswell v. State,* 126 Md. 103, 107, 94 A. 549; *Brenner v. Brenner,* 127 Md. 189, 193, 96 A. 287. The fact that some of them were first drafted for use in connection with another plan can have no bearing on their construction in the act as it is, and is to be disregarded. The Comptroller is not in fact limited to reports of sales for his computation of the tax; by the express terms of the act he may require all other information needed from the merchants.

Testimony was taken on a wide range of facts as a basis for challenging the legislation, and it is objected on behalf of the Comptroller that much or all of it is inadmissible for the purpose. *Mt. Vernon Co. v. Frankfort Co.,* 111 Md. 561, 75 A. 105; *Hadacheck v. Sebastian,* 239 U. S. 394, 36 S. Ct. 143, 60 L. Ed. 348; review of decisions. *L. R. A.* 1915D, 458. The court in this case would arrive at the same conclusions with or without the testimony, and there is no need of deciding what, if any, of it could properly be admitted.

A main contention in the case, to which much of it was addressed, is that the tax is invalid because of the

resulting hardships on many merchants. In the face of one fact, shown in the appellants' brief, that similar taxes are levied in other states at rates of two per cent., two and one-half per cent., and three per cent. of the receipts from sales, it would hardly be possible for this court, contradicting the Legislature if it had the right to do so, to adjudge the tax of one per cent. to be excessive in amount. But the Legislature is the body authorized to fix the law on the wisdom and fairness of a tax for revenue. The present tax is plainly one for revenue, and not for the limited purpose of police regulation. See review of decisions, 89 *A. L. R.* 1432. Therefore there could be no confiscation by a charge exceeding all reasonable relation to regulation. And as the tax is an imposition of the sovereign power of the State directly, there is no question of construing a delegation of power to be limited to a reasonable exercise. The courts, therefore, cannot upon the evidence oppose their judgment to that of the Legislature on imposing any tax, or on the fairness of the amount imposed. It is only when a license fee is exacted as a police regulation that the court can consider whether it is so unreasonable as to amount to a prohibition. 1 *Cooley, Taxation* (4th Ed.) sec. 72; *State v. Hunt,* 129 N. C. 686, 40 S. E. 216; *Woodall v. Lynchburg,* 100 Va. 318, 40 S. E. 915; *Bradley & Co. v. Richmond,* 110 Va. 521, 66 S. E. 872. "We are now dealing with a statute passed by the legislature for the benefit of the state, and we are not called upon to draw nice distinctions between the power to license for regulation, and the power to license with a view to revenue, as is sometimes required in construing charters of municipal corporations for the purpose of determining whether or not such corporation had the power to exact certain license fees. The cases of *Vansant v. Harlem Stage Co.,* 59 Md. 330, and *State v. Rowe,* 72 Md. 548, 20 A. 179, cited by the appellees, are of the latter kind. * * * The courts must leave to the sound discretion of the legislature, which, of course, should be honestly exercised, the question as to what occupations shall be licensed, what rates

shall be charged, etc., so long as the laws do not manifestly conflict with some provision of the constitution of the United States or of the state." *State v. Applegarth,* 81 Md. 293, 300, 31 A. 961, 962. "This is not a question of the exercise of mere police power, or of the power merely to license or regulate. * * * Under section 6 of the Charter the Mayor and City Council is given the power 'to license, tax, and regulate all businesses, trades, avocations, or professions,' and under this grant of power the city had the clear right to impose the charge of $200 'for the use and privilege of selling in this market.' " *Meushaw v. State,* 109 Md. 84, 91, 71 A. 457, 460; *State v. Shapiro,* 131 Md. 168, 173, 174, 101 A. 703. "The court will not declare an act unconstitutional because it is unwise or inexpedient, nor will it strike it down because it will operate harshly upon persons affected by it. These are matters committed to the judgment of the law making power." *Painter v. Mattfeldt,* 119 Md. 466, 473, 87 A. 413, 416; *Weber v. Probey,* 125 Md. 544, 551, 94 A. 162; *County Commissioners v. Union Mining Co.,* 65 Md. 543, 549; *Veazie Bank v. Fenno,* 8 Wall. 533, 548, 19 L. Ed. 482; *Spencer v. Merchant,* 125 U. S. 345, 355, 8 S. Ct. 921, 31 L. Ed. 763; *Knowlton v. Moore,* 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969. The complaint of hardship from the tax is not therefore to be acted upon in this tribunal.

The objection that there is a deprivation of property without due process of law in the exaction of the tax on the basis of receipts from sales before passage of the act, or a tax on a privilege already exercised free of the tax, rests on a construction that we think unnecessary, and, indeed, inadmissible. There is authority that would put the constitutionality of such a retroactive effect in question, in the decision of the United States Supreme Court that an excise tax on gifts made before the enactment of the statute for it was so arbitrary and capricious as to amount to deprivation of property without due process of law. *Untermyer v. Anderson,* 276 U. S. 440, 48 S. Ct. 353, 72 L. Ed. 645; *Blodgett v. Holden,* 275 U. S.

142, 48 S. Ct. 105, 72 L. Ed. 206. But if we assume, without deciding, that the retroactive effect attributed to the present act would be unconstitutional, we must also assume, if the terms of the statute permit, that the General Assembly intended its enactment to have effect only within the limits of constitutionality. *Swann v. Baltimore,* 132 Md. 256, 260, 103 A. 441; *Levin v. Hewes,* 118 Md. 624, 640, 86 A. 233. And the statute, reasonably construed, appears to this court to exclude from the basis of the tax these receipts from sales before the enactment. By its terms it is a license tax on the privilege of engaging in business, to be measured by receipts from sales. An intention to license business already engaged in previously might of itself be considered so illogical and unreasonable as to be doubtful. Words in a statute are never to be given a retroactive effect unless they compel it. *Ellicott City v. Howard County,* 127 Md. 578, 584, 96 A. 798; *State v. Safe Dep. & Trust Co.,* 132 Md. 251, 253, 103 A. 435. As is well known, taxation of this kind, on selling, is resorted to in the expectation that the burden will be distributed to some extent among consumers, and the distribution would not be possible with respect to sales made previous to the enactment, and without notice that prices might need to be adjusted for the purpose. But a clearer indication is afforded by provisions, sections 72-C and 72-E, that the taxes shall be computed on the basis of returns made by the sellers, beginning on or before the 10th day of May, 1935, of sales during the preceding month. Many smaller merchants might have kept no records of sales before the requirement was promulgated; and this appears to be recognized in the provision, in section 72-F, that all are to keep records of sales and such other records as may be necessary to determine the tax liability under the act. These considerations have led the court to a construction that the statute is free of the supposed retroactive requirement complained of, and that it cannot be held unconstitutional for that reason. It follows also that the contrary construction by the Comptroller is erroneous.

The construction which leads to the complaint that sellers on credits beyond the months of sales are practically exempted is also, in the opinion of the court, a mistaken one. Omission of the large proportion of sales and receipts which are on credit would be a surprising one, defeating to a great extent the purpose of the enactment, and is not to be inferred unless the inference is compelled by the terms of the act. Section 72-C, as has been seen, requires that the sellers shall, on or before the 10th day of each month, make a return of the sales and total selling price in each month, and shall pay the Comptroller the amount of the tax imposed. Section 72-E provides that as soon as practicable after the return is filed the Comptroller shall examine it and compute the tax. But the court does not see that these provisions operate to restrict the basis to receipts of selling prices during the months of sales. The sections seem to have no reference to the time of the receipts from sales reported, or time of collection of the tax on the basis of the receipts. The returns of the sales, and such additional information as the Comptroller may require, give him the selling prices, "paid or to be paid," in the words of the section of definitions, 72-A. He is then in possession of the ultimate basis of the tax, although as to deferred payments he is not entitled to collect at once. We see nothing to interfere with the evident purpose that all receipts of the sales reported shall be taxed. The Comptroller may compute whatever the general purpose of the statute requires, so far as the basis is ready for the computation.

The argument that receipts after the whole year of the tax, that is, after March 31st, 1936, cannot serve as a basis of computing any of it rests in part upon this construction limiting computation and collection to receipts during the months of sales from which they are derived. And that construction we have found to be mistaken. But there is a further ground. The words of section 72-B may, considered alone, be read to exclude from the basis or measure of the taxation money from sales during the year not received until after the year. "There is hereby

imposed upon every person engaging in such business a license fee or tax * * * at the rate of one per centum of the gross receipts of any such person, on or after April 1st, 1935, to and including March 31st, 1936, from the sale of all tangible personal property at retail in this State." But it is still to be considered that the intended subject of the license or tax is the business or occupation through the year, and the receipts from the selling are to serve in the subordinate, auxiliary capacity of the measure of that tax on the exercise of the privilege throughout. The construction contended for would in large part defeat the purpose of licensing and taxing the business by denying use of the measure in so far as any payments of selling prices might be deferred on credit over the last day of the year, as many would be of course. That seems to be giving the date a meaning and effect which cannot belong to it, in the intention of the Legislature. "Statutes should be construed with a view of the original intent and meaning of the makers, and such construction should be put upon them, as best to answer that intention, which may be collected from the cause or necessity of making the act, or from foreign circumstances; and when discovered, ought to be followed, although such construction may seem to be contrary to the letter of the statute. * * * That, therefore, which is within the letter of a statute, is sometimes not within the statute, not being within the intention of the makers." Buchanan, C. J., in *Chesapeake & O. Canal Co. v. Balto. & O. R. Co.,* 4 G. & J. 1, 152; *State v. Boyd,* 2 G. & J. 365, 374; *Baltimore v. Root,* 8 Md. 95, 105; *Commercial Assn. v. Mackenzie,* 85 Md. 132, 137, 36 A. 754; *Mitchell v. State,* 115 Md. 360, 365, 80 A. 1020; *Stoll v. Baltimore,* 163 Md. 282, 293, 162 A. 267. The court for these reasons disagrees with the contention that there is an unconstitutional exclusion of the delayed receipts on credit.

As for the partial exemption of motor vehicles dealers by the subsequent enactment, chapter 539 of the same legislative session, it is questioned whether this could, if involving an unconstitutional discrimination within the

class properly subject to the tax, have the effect of invalidating the previous act, in which it was not contained, or could have any effect other than to leave the previous act standing in its full original force without the amendment. *Truax v. Corrigan*, 257 U. S. 312, 341, 42 S. Ct. 124, 66 L. Ed. 254; *Eberle v. State of Michigan*, 232 U. S. 700, 34 S. Ct. 464, 58 L. Ed. 803; *Smith v. Dirckx*, 283 Mo. 188, 223 S. W. 104. But the Legislature is possessed of a wide discretion in adapting excise laws, by exemptions or otherwise, to demands of fairness, convenience, and public policy, and thus constructing the class to be brought within the tax. And unless the distinctions it makes are obviously without reasonable foundation in conditions to be dealt with, there is no departure from constitutional powers, and the courts have no function to fulfill. *Ness v. Supervisors of Elections*, 162 Md. 529, 538, 160 A. 8; *Dinneen v. Rider*, 152 Md. 343, 364, 136 A. 754; *State v. Applegarth*, 81 Md. 293, 303, 31 A. 961. And no such obvious lack of foundation is found in this instance. The dealers are already subject to the separate titling tax, and this, with the remainder of the gross receipts tax, may have been found to put them on a basis of substantial equality with other dealers. The titling tax is collected with greater convenience, and that fact is one which might move the Legislature to retain it. We cannot say with assurance that the easy mobility of motor vehicles and the competition with dealers in other jurisdictions do not, as argued, require special, separate treatment of the dealers. Such possibilities would prevent the court's concluding that the partial exemption of motor vehicle dealers constitutes an unreasonable discrimination.

Of other criticisms of the act, we think it necessary to discuss only two. By section 72-E, paragraphs (c) and (d), penalties are provided for deficiencies in payments of the tax when the result of negligence and fraud with intent to evade payment, and it is objected that the Comptroller is given power to adjudicate the fact and exact the penalty. Necessarily, there must be an official opinion

and move to enforce these provisions, but there is nothing in them which denies the taxpayer the right and opportunity to contest in any instance the facts upon which the imposition is made. A section, 72-P, paragraph (d), provides that of the net fund collected, "the sum of $3,500,000 shall be disbursed upon warrant of the Comptroller, subject to the approval of the Board of Public Works, and expended under the supervision of the Board of State Aid and Charities for the relief of distress within the State arising out of involuntary unemployment, flood, epidemic or other emergency." And a sum not exceeding $1,500,000 is likewise required to be paid or contributed to the payment of old age pensions. Objection is made that these provisions compel the expenditures at all events. So far as that might be a valid objection, the answer would seem to be, as to other criticisms of the act, that the construction is not a necessary one, and would, in fact, be inadmissible because unreasonable. The Legislature might, and surely did, assume an interpretation and acceptation of its words which would not require the money, or any part of it, to be spent without need.

The only ground for relief found, then, is in the regulation of the Comptroller which would require payment of the tax on any credits remaining unpaid from sales before April 1st, 1935. There are probably few remaining, but collection of the tax on receipts still to come in from sales made before April 1st, 1935, should have been restrained, according to the construction of the act which we conclude to be the proper one, and the case will be remanded so that the decree may be modified to embody that injunction.

> *Decree affirmed in part and reversed in part, and cause remanded for passage of a decree in accordance with this opinion, the parties to pay their own costs respectively.*